## M. C. HALL *vs.* JOINER AND McCALLISTER.

Verbal agreement between A. and B., whereby A. agreed to make advances to B. in money, provisions, &c., to enable the latter to carry on a turpentine farm; and B. agreed to deliver to A. the products of the farm, to be by him sent to market, sold, and the proceeds applied to refund the advances. A. made advances under the agreement, and B., in denial of, and in fraud of, A.'s rights, shipped products of the farm to market: *Held,* That A. could not maintain a bill in equity against B. for discovery, specific performance of the agreement, or injunction.

B. also, with intent to hinder and defraud A., made a .fraudulent conveyance to C., of property embraced within the agreement: *Held,* That A. could not maintain a bill to set aside the conveyance.

The former remedial jurisdiction of equity, which arose out of the necessity for discovery, was superceded by the Act making parties competent witnesses.

It is a consequence of the Act which excludes Courts of Equity from jurisdiction, where there is plain and adequate remedy at law, that where a new remedy is conferred at law it operates to destroy the pre-existing jurisdiction in equity assumed for want of such legal remedy.

Bill for specific delivery of a chattel lies only in a case where the value of the chattel to the owner cannot be estimated by reference to market value, as where it is a work of art, or a deed, &c., and the value to the owner arises from moral or artistic considerations, or is not intrinsic, or commercial, but representative.

A simple contract creditor cannot maintain a bill in equity against his debtor and the grantee, to set aside a fraudulent conveyance of the debtor's property, even though the debtor be insolvent, and, without the aid of an injunction, the debt may be lost. He must first proceed at law, and exhaust his remedy there.

BEFORE JOHNSON, CH., AT WILLIAMSBURG, FEBRUARY, 1868.

The decree of His Honor the Chancellor is as follows:

JOHNSON, Ch. In this case, it appears to the Court, from the pleadings, exhibits and testimony, that Mark C. Hall, the complainant, and Benjamin Joiner, one of the defendants, in January, 1867, made, or entered into, a verbal agreement that said Hall would furnish provisions to feed the employees, and money to pay the rent and work hands; that said Joiner, and McCallister, his partner—at least, in the net proceeds—would place in his hands, of the first turpentine made on a farm to be cultivated by them, enough with which to pay for said advances; that, with this understanding, the defendants, Joiner and McCallister, commenced to cultivate their turpentine farm, hired hands, and went vigorously to work; that about all the means they had to rely on, in carrying on their operations, was to be obtained from said complainant, who regularly furnished the necessary supplies for a few weeks; that, even as early as somewhere in February, he failed, on one occasion, to furnish the work hands, and on several occasions afterwards, to

the great inconvenience of said defendants; that said failures so greatly embarrassed the operations of said Joiner and McCallister as to seriously threaten the discontinuance of working their farm, and, in order to avoid such a calamity, Joiner went to Steele, one of the partners of McCallister & Steele, and proposed, if said firm would furnish supplies for said farm, that they should be paid out of the products thereof—out of the first turpentine which might be prepared for market; and, after some consideration, the offer was accepted. It further appears that McCallister & Steele were ignorant of the agreement between Joiner and the complainant, and that, after furnishing considerable goods and supplies to Joiner, the latter, hearing that the complainant was taking steps to attach his turpentine, or interfere, in some way, to obtain the balance due him by legal process, conveyed said turpentine on hand, with some other personal property, to McCallister & Steele, by way of pledge for the amount due them by him. The amended bill makes them party defendants, and attempts to make them account for the turpentine they received off said farm; and prays for attachment for contempt of Court against Joiner and McCallister for permitting said turpentine to be removed after the writ of injunction was served on them, under an order obtained from the Commissioner after the conveyance to McCallister & Steele.

In the view taken, it is not necessary to consider the plea of the statute of frauds, as applicable to this case, made in the answer of the defendants, Joiner and McCallister. It appears to the Court that McCallister & Steele were purchasers of the turpentine, without notice. Even if the complainant had any claim to a lien, as to Joiner and McCallister, he could have none on the property conveyed, after the same had gone into the possession of McCallister & Steele, purchasers for valuable consideration, without notice. They cannot, therefore, be made to account for the turpentine received by them under said conveyance. Nor can the Court perceive that contempt of its process has been committed by Joiner and McCallister, in permitting McCallister & Steele to receive the turpentine, which they had purchased before a writ of injunction was ordered. The evidence submitted leads to the irresistible conclusion that it was because of the failure of the complainant to perform his part of the verbal contract between himself and Joiner, which compelled Joiner to go elsewhere to obtain supplies, and enter into new obligations therefor. Such failures, even if the same had been in writing, and notice thereof given to the world, would have been good cause

for Joiner and McCallister to have refused to perform their part of the contract, and this Court would not enforce it. It seems, however, that Joiner and McCallister did place in the hands of complainant, turpentine enough to pay largely on the account for supplies—perhaps enough to cover this part of the account; and that, if proper credits were given, it might appear that the balance due is for other than supplies, or money advanced with which to pay off the farm hands. It is further contended that the accounts kept by complainant were erroneously and improperly entered; in fact, that no proper book of original entries was kept by the complainant. The testimony submitted does not satisfy the Court that Joiner, as well as McCallister, are not solvent, and able to pay such a verdict as a Court of law might render in an action of assumpsit for goods sold and delivered. In the hasty examination, by the Court, of this voluminous case, without being satisfied with the reasoning given herein, yet the conclusions are satisfactory, and it is the opinion of the Court that the injunction heretofore issued should be dissolved, and that the bill should be dismissed, and it is so ordered.

The complainant appealed, and now moved this Court to reverse the decree of the Chancellor, on the grounds:

1. Because there was no sufficient failure, on the part of the complainant, in performing his part of the contract, to deprive him of the rights to a specific performance from the defendants.

2. Because, no matter how *plain*, there was and is not any *adequate remedy at law*.

3. Because the contract does not fall within the statute of frauds.

4. Because, if originally within the purview of the statute, part performance has taken it out of it.

5. Because the nature of the contract was such as to give the complainant an equitable lien upon all the products of the turpentine farm, to the extent of his advances.

6. Because the remedy sought in the present proceedings affords the only adequate remedy to enforce said lien.

7. Because McCallister & Steele, the assignees of Joiner, if they took any interest in the deed made to them at all, took subject to all the equities existing between the complainant and the said Joiner.

8. Because the said deed was made under such circumstances as to show, conclusively, that it was fraudulent, and it, therefore, should be set aside.

9. Because the plea of purchase for valuable consideration, without notice, will not avail the defendants in this case:

I. Because the turpentine assigned was a chose in action.

II. Because the consideration of the deed was an antecedent debt.

III. Because the defendant, Steele, the managing member of the firm, did have notice sufficient to have put him upon the inquiry, while he purposely avoided making any inquiries.

*S. W. Maurice*, for appellant.

————, contra.

Oct. 9, 1869.   The opinion of the Court was delivered by

WILLARD, A. J.   This is an appeal from a decree dismissing the bill of complaint.   The bill alleges a verbal contract between complainant and the defendants to the original bill, to the effect that, in consideration that the complainant should, from time to time, as occasion might require, furnish defendants with means to pay the rent of their lands, with provisions to feed their employees, and money to pay the said employees, the said defendants would deliver to complainant the productions of their farm, to be by him, in his own name, sent off to market, sold, and so much of the proceeds applied as might be necessary to refund the advances made by complainant.   It was also agreed, upon the same considerations, that defendants should manufacture turpentine barrels, to be delivered to a third party, the price of said barrels to be charged against the complainant, on account of his advances.   This part of the contract appears to have grown out of certain arrangements existing between the complainant and such third party, and is not essential to an understanding of the case.   The bill alleges a violation, on the part of the defendants, of this contract, and an indebtedness by them for advances made by the complainant, in accordance with his agreement; also, a shipment to market, by the defendants, of turpentine, part of the product to which the contract related, in denial and in fraud of the rights of the plaintiff, and prays a discovery and a specific performance of the contract.   It also contains a prayer for general relief and for an injunction.

The defendant, Joiner, answered, admitting a verbal contract with himself, irrespective of his co-defendant, but alleging it in terms somewhat different from those set forth by the complainant;

though not changing its substantial effect, in its relation to the questions decisive of this appeal. McCallister answered, but it will not be necessary to consider either of the answers more in detail.

The complainant amended his bill, setting forth additional facts, to wit: That, with intent to hinder and defraud said complainant, as their creditor, and in fraud of his rights under the contract set forth in the original bill, the defendants had made a fraudulent and colorable conveyance of property embraced within the original contract, to McCallister & Steele—charging McCallister & Steele with fraudulent complicity—and prayed a writ of subpœna against them, and a decree.

The appellants set forth many grounds of appeal, which it will not be necessary to consider in detail, as the view taken of this case disposes of it upon more general grounds.

Under the aspect of the case presented by the original bill, it would be necessary for the complainant to establish a fiduciary relation, in the nature of a trust, either express or implied, as between himself and the original defendants, in order to warrant the interference of a Court of Equity with the course of the common law, as applicable to the case.

As a bill of discovery alone, it cannot, independent of other equitable grounds of relief, be maintained. The right to examine the parties to an action as witnesses, conferred by statute, affords an adequate remedy at law for that class of cases in which a remedy was formerly allowed in equity, on the ground of the necessity of a discovery. In this State, the exclusion of Courts of Equity from jurisdiction in cases in which an adequate remedy is conferred at law rests on the *statute*; (*Eno* vs. *Calder*, 14 Rich. Eq., 154: Dunkin, C. J.;) consequently a new remedy at law operates to destroy the pre-existing remedies in equity allowed for the want of such legal remedy.

Nor can the bill be maintained on the ground of specific, or part, performance. The latter doctrine is wholly inapplicable to the case, as the complainant's difficulty does not arise out of the statute of frauds, but from the nature of his contract, and the limited powers of a Court of Equity. No authority exists for specifically enforcing, in equity, a contract of the character set forth in the pleadings as the foundation of the complainant's demand for a decree. It cannot be likened, with any success, to a bill for the specific delivery of chattels. The chattel property that was the subject of that exceedingly limited and exceptional jurisdiction, was

always of a peculiar character, the value of which, to the owner, could not be estimated by reference to market value. Equity valued the right of property of the owner as affected by an attachment to the individual piece of property claimed, resting upon moral or artistic grounds, as in the case of slaves, works of art of an original character, &c., &c., or by the circumstance that in certain cases such value was neither intrinsic nor commercial, but merely representative, as in the case of deeds or other evidences of title'or right.

The element of value to which the complainant's contract looked was commercial purely, and capable, therefore, of just ascertainment at law.

It is proper to remark that the complainant has not adopted the mode of dealing with the defendants that would secure, at common law, or under the statute, a legal lien on the property against which he seeks relief. Can he claim an equity of a substantial value to him equal to that of a legal lien on the property? This is what he, in effect, seeks.

As has been said, a fiduciary relation must be shown to exist between the complainant and the original defendants before such a result can be obtained. The contract warrants no such assumption. The complainant agreed to make certain advances, in order to secure the factorage of property to be derived from a specified venture. The profit to which he looked was commissions. His security was the covenant of the original defendants; and the extent of his risk, in addition to the ordinary casualties of business, depended on the good faith of those defendants in performing their covenant. There was no community of profit and loss to characterize the transaction as a partnership. The complainant's advances were made upon the faith of the defendants' agreement to consign the product of the business to him. The only trust affecting the advances made by complainant in the hands of defendants was, that they should be laid out in the production of certain goods, and this was done. The trust, such as it was, was fully executed, the only complaint being that the product of the business was not consigned, as the defendants contracted to do. This, at most, is a breach of contract, for which the only redress is at law.

The relations established by the contract involve nothing of a fiduciary nature from which a trust, express or implied, can arise useful to the complainant. The confidence reposed is in the nature of a commercial credit, and no relief can be afforded on this ground in equity.

The ground presented by the amended bill is equally untenable. A simple contract creditor, in a case *inter vivos*, has no standing in a Court of Equity to set aside a fraudulent conveyance. He must exhaust his remedy at law, and it is only after judgment, and in aid of his execution, or to have a discovery of assets, after satisfaction at law has failed, that he can appeal to a Court of Equity.— *Eno* vs. *Calder*, supra.

The circumstance that the judgment debtor is insolvent, and that, without the aid of an injunction, the debt will be lost, is, in itself, insufficient to sustain the allegation that there is no adequate remedy at law.

The decree must be affirmed; but without costs to the prevailing party.

*Moses*, C. J., concurred.